IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ROBERT MELÉNDEZ,

Plaintiff

v.

AUTOGERMANA, INC.,

Defendant

CIVIL 07-2094 (GAG)

## OPINION AND ORDER

Plaintiff Robert Meléndez brings the present action against Autogermana, Inc. under the provisions of the Age Discrimination in Employment Act ("the Act" or "ADEA"), 29 U.S.C. § 621 et seq. This court's supplemental jurisdiction (under 28 U.S.C. § 1367) is also invoked to assert claims under Puerto Rico law, namely Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, §§ 1323-1333. Under Puerto Rico law, plaintiff may recover double the amount of damages against the responsible employer. See P.R. Laws Ann. tit. 29, § 1341. The plaintiff requests declaratory judgment and monetary damages.

This matter is before the court on motion for summary judgment and accompanying memorandum filed by defendant on October 30, 2008 (Docket Nos. 20 & 21.) A statement of uncontested facts was also submitted. (Docket No. 20-2.) Plaintiff filed a memorandum in support of its motion in opposition to the motion for summary judgment on December 19, 2008. (Docket No. 31.) Plaintiff supported its opposition with a statement of contested and uncontested facts. (Docket No. 32.) Plaintiff also submitted a statement under the penalty of perjury. (Docket No. 32-11.) Defendant replied to plaintiff's response on January 28, 2009. (Docket No. 38.) Defendant further replied to plaintiff's response to the statement of contested facts on January 28, 2009. (Docket No. 39.)

CIVIL 07-2094 (GAG)                                    2

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  To succeed on a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial and that a trier of fact could reasonably find in its favor. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).  The party opposing summary judgment must produce "specific facts, in suitable evidentiary form," to counter the evidence presented by the movant. López-Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000) (quoting Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994)).  A party cannot discharge said burden by relying upon "conclusory allegations, improbable inferences, and unsupportable speculation." Id.; see also Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002) (quoting J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1996)) ("'[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment.").

The court must view the facts in a light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor. Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215, 217 (1st Cir. 2008) (citing Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006)); Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).  A fact is considered material if it has the potential to affect the

outcome of the case under applicable law.  Nereida-González v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).  The court must determine whether either party is entitled to judgment as a matter of law on facts that are not disputed. Adria Int'l Group, Inc. v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001).

## LOCAL RULE 56

In the District Court of Puerto Rico, Local Rule 56(b), previously Local Rule 311(12), requires a motion for summary judgment to be accompanied by a separate, short and concise statement of material facts that supports the moving party's claim that there are no genuine issues of material fact in dispute.  These facts are then deemed admitted until the nonmoving party provides a similarly separate, short and concise statement of material facts establishing that there is a genuine issue in dispute.  Local Rules of the United States District Court for the District of Puerto Rico, Local Rule 56(e) (2004); see Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43 (1st Cir. 2001); Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001); Ruiz Rivera v. Riley, 209 F.3d 24, 27-28 (1st Cir. 2000); Domínguez v. Eli Lilly & Co., 958 F. Supp. 721, 727 (D.P.R. 1997).

Additionally, the facts must be supported by specific reference to the record, thereby pointing the court to any genuine issues of material fact and eliminating the problem of the court having "to ferret through the Record." Domínguez v. Eli Lilly & Co., 958 F. Supp. at 727; see also Carmona Ríos v. Aramark Corp., 139 F. Supp. 2d 210, 214-15 (D.P.R. 2001); Velázquez Casillas v. Forest Lab., Inc., 90 F. Supp. 2d 161, 163 (D.P.R. 2000).  Failure to comply with this rule may result, where appropriate, in judgment in favor of the opposing party.  Morales v. A.C. Orssleff's EFTF, 246 F.3d at 33.  Parties have for the most part complied with our local anti-ferret rule.

CIVIL 07-2094 (GAG)                                    4

### ADEA

The policy behind the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., is: "to promote employment of older persons based on their abilities rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). To achieve these goals, the Act makes it unlawful "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1); Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 66 (2000). Therefore, "liability depends on whether . . . [age] actually motivated the employer's decision." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)). Most significantly, plaintiff's age must play an actual role in the employer's decision making process and have a determinative influence in the outcome. Id.

It is well established that an ADEA plaintiff at all times bears the burden of proof in age discrimination cases. Shorette v. Rite Aid of Me., Inc., 155 F.3d 8, 12 (1st Cir. 1998); see also Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 332 (1st Cir. 1997); Sánchez v. P.R. Oil Co., 37 F.3d 712, 723 (1st Cir. 1994). However, rarely will a plaintiff be able to proffer direct evidence of a discriminatory animus, because seldom will there "be 'eyewitness' testimony as to the employer's mental process[]". Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. at 141 (quoting U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)). In such cases where a plaintiff lacks direct evidence that an employer's actions were motivated by an age animus the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973),

CIVIL 07-2094 (GAG)                          5

dictates the progression of proof.  Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000) (citing Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991)); Piñeiro-Ruiz v. P.R. Ports Auth., 557 F. Supp. 2d 248, 253 (D.P.R. 2008).

"Direct evidence of [age] discrimination is . . . evidence [that standing alone] . . . shows a discriminatory animus." Mandavilli v. Maldonado, 38 F. Supp. 2d 180, 192-93 (D.P.R. 1999) (quoting Jackson v. Harvard Univ., 900 F.2d 464, 467 (1st Cir. 1990)).  Direct evidence "consists of statements by a decisionmaker that directly reflect the alleged animus and [stand] squarely on the contested employment decision." Febres v. Challenger Carribbean Corp., 214 F.3d 57, 60 (1st Cir. 2000); see also Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 96 (1st Cir. 1996) (stating that the remarks or comments must be linked to the adverse employment decision).  On the other hand, "[s]tray remarks in the workplace, statements by non-decisionmakers, or statements by decisionmakers unrelated to the decisional process itself do not constitute proof of direct evidence." Adams v. Corporate Realty Servs., Inc., 190 F. Supp. 2d 272, 276 (D.P.R. 2002) (citing Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)).  For example, direct evidence would be an admission by the decision making employer that it explicitly considered age in reaching an employment decision. See Smith v. F.W. Morse & Co., 76 F.3d 413, 421 (1st Cir. 1996).

### III.  FACTS

Autogermana, Inc., hired Meléndez on February 27, 1996, at the time its business first opened.  (Docket No. 1, at 2-3, ¶¶ 7 & 9; Docket No. 22, at 2.)  He became a salesperson in the sales department.  For various years, defendant's parent company ("BMW") frequently recognized plaintiff for his superior sales.  (Docket No. 1, at 3, ¶ 8.)  Between 2001 and 2005, he received the Top Seller or Profile in Achievement Award from both BMW of North America and Autogermana,

CIVIL 07-2094 (GAG)                          6

Inc. (Docket No. 32, at 2-5, ¶¶ 2-6.) According to plaintiff, prior to his termination defendant began a "discrimination campaign", where members of defendant's staff would alternately make insulting remarks about plaintiff and ostracize plaintiff from the rest of the group. (Docket No. 1, at 3, ¶ 10, at 3-4, ¶ 14.) Comments would be made out loud among other salesmen, calling plaintiff "el abuelo" (grandpa), or "el viejo" (the old man) since plaintiff was a single parent having had his first son when he was over 45. (Id.)

BMW implemented a modification of payment structure related to commissions in March of 2006, whereby all of defendant's salespersons were required to sell 12 new cars, and one used car, per month. (Docket No. 25-2.) Those who failed to sell over 85% of their monthly quota, for the quarter, were subject to immediate dismissal. (Docket No. 25, at 2.) Before his dismissal, plaintiff received several memorandums from his supervisors in relation with his performance as a salesperson. (Docket No. 20-2, at 2-3.) The first performance evaluation was held July 7, 2006. (Id. at 2, ¶ 3; Docket No. 20-10.) Plaintiff failed to sell 85% of his quota, and was terminated. (Id.; Docket No. 1, at 2-3, ¶ 7.) Plaintiff was dismissed along with Carlos Palmero, a 32-year old salesperson. Autogermana had to dismiss four other employees as well: Danny Colón, "Iko", Gustavo Bernard, and Roger Rivera. (Docket No. 20-2, at 5, ¶¶ 5 & 6.) Plaintiff had worked at Autogermana, Inc. just over 10 years.

### IV.  DISCUSSION

"In employment [termination] cases, the plaintiff must make a *prima facie* . . . showing that: (1)[he] is a member of a protected class; . . . [2][he] was qualified for the employment [he] held"; (3) his employer took an adverse action against him; and (4) there remained a continuing need for (his) services. Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001) (internal

CIVIL 07-2094 (GAG)                                7

citations omitted); see McDonnell Douglas Corp. v. Green, 411 U.S. at 802; Piñeiro-Ruiz v. P.R. Ports Auth., 557 F. Supp. at 253.

The parties are in agreement that plaintiff satisfies prongs 1, 3, and 4 of the McDonnell-Douglas test. (Docket No. 21, at 4.) As to the first, Meléndez was over the statutorily required age of 40. To the third, Meléndez was adversely affected in being fired. And to the fourth, there was a continuing need for his services. Id. The parties however disagree on the sufficiency of plaintiff's proffered evidence as to the second element, the satisfaction of the employer's legitimate expectations. Id.

When attempting to prove this *prima facie* element, an employee must address two considerations: first, "whether the employer's expectations were legitimate and if so, whether the employee was meeting those expectations." Dale v. Chicago Tribune Co., 797 F.2d 458, 463 (7th Cir. 1986). When measuring performance, "plaintiff need not show perfect performance or even average performance"; he must "only show that his performance was of sufficient quality to merit continued employment. . . ." Powell v. Syracuse Univ., 580 F.2d 1150, 1155 (2nd Cir. 1978) (citing Flores v. Crouch-Walker Corp., 552 F.2d 1277, 1283 (7th Cir. 1977)). As evidence, plaintiff turns to his numerous awards and achievements: BMW awarded Melendez with "Profiles in Achievement" for his sales performance in the years 2001, 2002, 2003, 2004, and 2005. (Docket No. 31, at 5.) While an impressive achievement, this alone cannot suffice to prevail over a motion for summary judgment. "[T]he question is not whether at any time in [Meléndez'] employment he was meeting his employer's expectations; the question is whether he was meeting his employer's expectations at the time he was terminated." Peters v. Renaissance Hotel Operating Co., 307 F.3d 535, 545-46 (7th Cir. 2002). At the time of his termination, plaintiff failed to make his

CIVIL 07-2094 (GAG)                                8

monthly quota of 13 cars.  (Docket No. 21, at 6.)  Meléndez cannot avail himself of his historically superior sales record as evidence of his continuing satisfaction of defendant's expectations.

     Plaintiff also argues that the recession in Puerto Rico during the years of 2005-2006 affected the number of potential customers, and thus made the defendant's expectations unreasonable, as evidenced by the inability of any of defendant's employees to make their quota.  (Docket No. 31, at 6.)  Plaintiff further submits that BMW failed to make available an adequate number of cars, relative to the collective quota, thus making his ability to reach his quota even more difficult.  (Id. at 9.) When determining whether an employer's expectations were legitimate, this court must ask: whether the employer communicated its expectations; and if so, whether the expectations were unreasonable.  Dale v. Chicago Tribune Co., 797 F.2d at 463 (citing Huhn v. Koehring, 718 F.2d 239, 244 (7th Cir. 1983) (quoting Kephart v. Inst. of Gas Tech., 630 F.2d 1217, 1223 (7th Cir. 1980)).  There is no doubt that defendant clearly communicated its expectations to plaintiff in the memorandum issued by BMW regarding the new sales quotas.  Plaintiff knew from March 1 through his first quarterly evaluation of the same year that he was now required to sell 12 new cars and one used car per month, and that should he fail to reach 85% of his quota for the period, defendant retained the right to terminate his employment.  (Docket No. 25-2, at 3.)  Whether defendant's expectations were reasonable is another matter, evidenced by the inability of any of its employees to make quota. (Docket No. 31, at 9; Docket No. 21, at 5-6.)  It is also questionable then, upon what other criterium did defendant rely when firing plaintiff for "poor sales," when he was in a similar situation as everyone else.  Defendant correctly illustrates that the courts do not sit as a super-personnel department that reexamines an entity's business

CIVIL 07-2094 (GAG)                              9

decisions. Leblanc v. Great Am. Ins. Co., 6 F.3d 836, 847 (1st Cir. 1993.) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d at 825); (Docket No. 38, at 5.) Still, the standard for showing *prima facie* discrimination is not stringent. Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 44-45 (1st Cir. 2002) (describing the *prima facie* discrimination as a "low standard") (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)); see also Torrech-Hernández v. Gen. Elec. Co., 519 F.3d 41, 49 (1st Cir. 2008) (requiring only a "minimal evidentiary showing" for the *prima facie*).  Based on this argument proffered by plaintiff, this court finds an inference of discrimination by the defendant, as evidenced by the discharge of plaintiff, a member of the protected class, and the oldest member of defendant's work force still working for the defendant at the time of discharge.

Finally, plaintiff offers his salary figures for the past several years. Specifically, he submits his 2006 salary information, for which he was paid through July 7, the date of his termination. (Docket No. 31, at 7-8.) Plaintiff's salary amounted to roughly half that of the previous three years, during which he worked the entire year. (Id.) Phrased differently, Melendez posits an inference that had he been performing inadequately, relative to the years he received accolades from BMW, his salary would not have been as high as it was. To this, defendant does not proffer an explanation. The figures, facially, suggest that he was meeting his quota. (Id.) Plaintiff's salary could be illustrative of other factors not mentioned by either party, such as bonuses awarded resulting from his various achievements throughout the prior year. Without context however, the court is merely conjecturing as to the meaning of the figures.

Once plaintiff has succeed in proving a *prima facie* case of discrimination, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for plaintiff's termination. McDonnell-Douglas v. Green, 411 U.S. at 802.

CIVIL 07-2094 (GAG)                              10

The burden is of production, not of persuasion: the defendant must singularly provide evidence that is "clear and reasonably specific." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 258; Oliver v. Digital Equip. Corp., 846 F.2d 103, 108 (1st Cir. 1988). Defendant clearly satisfies its burden. See Dávila v. Corporación de P.R. Para La Difusión Pública, 498 F.3d 9, 16 (1st Cir. 2007). Its proffered reason for terminating plaintiff's employment flows from his poor sales. (Docket No. 38, at 3.) In support, defendant provides several memoranda warning plaintiff of the effect of his continued inability to meet his sales quota. (Docket No. 20-2, at 2-3, ¶¶ 3 & 4.) Defendant further provides its company policy enumerating the sales quota for the employees, as well as the ramifications for the employee of failing to meet them. (Docket No. 25-2.) At the time of plaintiff's termination, he was required to sell an average of 13 cars a month over a three-month period: if he sold between 86% and 99% of his quota, he would receive a "performance memorandum"; if he sold 85% or less, he was subject to immediate dismissal. (Id. at 2.) During the three months prior to being fired, defendant's records show that plaintiff sold 19 cars, less than half of his 39 car quota. (Docket No. 21, at 6; Docket No. 25-2, at 3.) Defendant has clearly provided that it had a legitimate reason for terminating plaintiff's employment. It did in fact discharge the worst performers.

The burden falls once more upon plaintiff's shoulders to provide evidence that the defendant's proffered reason is merely a pretext, to cloak the true reason of age discrimination. McDonnell-Douglas v. Green, 411 U.S. at 805; Vesprini v. Shaw Contract Flooring Serv., Inc., 315 F.3d 37, 43 (1st Cir. 2002). Plaintiff can meet this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation [was] unworthy of credence." Texas Dep't of

CIVIL 07-2094 (GAG)                          11

Cmty. Affairs v. Burdine, 450 U.S. at 256 (citing McDonnell Douglas v. Green, 411 U.S. at 804-05).  Meléndez produces neither direct nor indirect evidence of intent to discriminate.  As evidence that defendant's explanation lacks credence, plaintiff posits that the sales numbers were "played around", i.e., they were altered to support defendant's case.  (Docket No. 31, at 10.)  Plaintiff provides no evidence to support this allegation, which is gossamer at best.  "[P]ersonal opinion[s], unsupported by fact, [are] not sufficiently probative on the issue of pretext." Torrech-Hernández v. Gen. Elec. Co., 519 F.3d at 53-54.  Plaintiff does not dispute that he repeatedly failed to make his quota during the sales quarter immediately preceding his termination.  Nor does he dispute that the other co-worker who was fired the same day was 32 years of age, significantly under the protection of the ADEA.  Plaintiff did not attempt to question the chart's veracity during discovery.  He registers shock at its production but clearly the information produced was or could have been produced during discovery.  In short, Meléndez' assertion that the numbers were manipulated amounts to little more than an unsubstantiated allegation.

     Summary judgment is proper in an age discrimination case where a plaintiff fails to present a genuine issue of material fact, indicating than an employer took an adverse employment against an employee because of the employee's age.  29 U.S.C. §§ 623(a)(1), 631(a); Torrech-Hernández v. Gen. Elec. Co., 519 F.3d at 48.  Plaintiff must not only satisfy all elements of this *prima facie* standard, but must also proffer evidence that defendant's stated reason is merely an insidious pretext for its discrimination.  Plaintiff has failed to provide any evidence of such pretext, other than his rote allegations and the hint of skullduggery.  That Puerto Rico began a recession in 2005 does not contribute to plaintiff's equation.  That nobody met the new quota does not lead *a fortiori* to the conclusion that the

CIVIL 07-2094 (GAG)                    12

modified structure was implemented in a discriminatory fashion with a discriminatory animus. That comments were made by his fellow salespersons regarding his age, calling him "el viejo" or abuelo, and that activities were held and he was excluded does not mean that age played an actual role in defendant's decision-making process and that age had a determinative influence in the outcome. The clearly non-discriminatory reason for plaintiff's discharge was performance and no evidence of pretext on defendant's part has been presented. The court therefore concludes that there is no genuine issue of material fact from which a reasonable trier of fact could find for the plaintiff, and that it is therefore entitled to judgment as a matter of law.

### VI.   SUPPLEMENTAL CLAIM

Plaintiff invoked the court's supplemental jurisdiction to assert claims under Puerto Rico Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, § 1323-1333. It is well-settled law that "[u]nder 28 U.S.C. § 1367, '[a] district court may decline to exercise supplemental jurisdiction' if 'the district court has dismissed all claims under which it has original jurisdiction." González-De-Blasini v. Family Dep't, 377 F.3d 81, 89 (1st Cir. 2004) (quoting 28 U.S.C. § 1367(c); (citing Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 104 (1st Cir. 2004)). "Certainly, if the federal claims are dismissed before trial, … the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs., 383 U.S. 715, 726 (1966). "[I]n the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). This is such a case.

CIVIL 07-2094 (GAG)                            13

Indeed, "age discrimination claims asserted under the ADEA and under Law 100 are coterminous."  Dávila v. Corporación de P.R. Para La Difusión Pública, 498 F.3d at 18; Torres-Alman v. Verizon Wireless Puerto Rico, Inc., 522 F. Supp. 2d 367, 402 (D.P.R. 2007).  Therefore, having dismissed the federal claim before trial, the court will not retain jurisdiction over plaintiff's supplemental Law 100 state-law cause of action.

## VII.  CONCLUSION

In view of the above, defendant's motion for this court to grant summary judgment is GRANTED.  The Clerk is directed to enter summary judgment in favor of the defendant dismissing this case in its entirety.

SO ORDERED.

At San Juan, Puerto Rico, this 17th day of March, 2009.

                              S/ JUSTO ARENAS
                       Chief United States Magistrate Judge